Plaintiff, Gladys Harrison, appeals from a summary judgment granted to defendant, Amcast Industrial Corporation, on Harrison's claim for Workers' Compensation death benefits. For the reasons that follow, the judgment of the trial court will be affirmed.
Gladys Harrison is the widow of Matthew Harrison. Mr. Harrison was an employee of a predecessor of Amcast from approximately 1947 until his retirement in 1978. In 1991, Mr. Harrison passed away due to respiratory failure as a result of cancer of the lung.
Mrs. Harrison filed a claim for death benefits with the Bureau of Workers' Compensation, alleging that her husband's lung cancer and subsequent death resulted from his exposure to certain materials while working at Amcast's foundry. Mrs. Harrison's claim was denied administratively by the Industrial Commission of Ohio on the ground that Mrs. Harrison failed to establish that her husband's death was the result of an injury or occupational disease sustained in the course of and arising out of his employment.
Mrs. Harrison then filed an appeal of the Industrial Commission's decision in the Montgomery County Court of Common Pleas, pursuant to R.C. 4123.512. Mrs. Harrison voluntarily dismissed that action and then subsequently refiled the present action. In her action, Mrs. Harrison sought a determination from the trial court that she was entitled to participate in the Workers' Compensation fund as a result of her husband's death.
Amcast filed a motion for summary judgment in which it asserted that Mrs. Harrison could submit no evidence to establish that her husband's lung cancer was causally related to his employment with Amcast. In support of its motion for summary judgment, Amcast filed the deposition of Dr. Scott Shaw, who was one of Mr. Harrison's treating physicians. Dr. Shaw had been listed by the plaintiff as one of the experts she would call at trial. Dr. Shaw testified that Mr. Harrison was a "heavy smoker" with a 50 to 60 pack/year history of smoking, which equated to smoking one pack of cigarettes per day for a period of fifty years. Deposition of Scott D. Shaw, M.D., Sept. 8, 1997, at p. 11. Dr. Shaw also testified that Mr. Harrison's "major risk factor for developing lung carcinoma was his heavy use of cigarettes." Id., at 13. Concerning the connection between Mr. Harrison's employment and his lung cancer, Dr Shaw testified as follows:
 Q. * * * Do you have an opinion as to whether his employment had any causal link to his development of cancer?
A. Yes.
Q. What is that opinion?
 A. My opinion is that there are certain environmental and industrial pollutants which can be co-carcinogens in the development of lung cancer. So exposure to any of those industrial or environmental pollutants in combination with cigarette usage would be potentially carcinogenic.
 Q. But in this case, based upon your history of a long relationship with Mr. Harrison, at least your office's long relationship, do they have any evidence or do you have any evidence that would suggest that he was exposed to those types of pollutants and that they were a contributing factor or a cause of his lung cancer while working with Dayton Malleable?
 A. I have no clear history of what exactly he was exposed to. There are certain things that have been determined as being co-carcinogens, but I'm not sure exactly whether he was exposed to any one of those in particular.
 Q. So in none of the medical records that you have or your office has retained do they note that he ever mentioned or that any information was ever collected that he was exposed to any of those co-carcinogens?
A. Right. That's correct.
Q. So you don't have any such evidence?
A. That's true.
Id., at 14-15.
Dr. Shaw gave similar testimony in another part of his deposition:
 Q. * * * Even up to the date of this deposition, do you have any evidence that there was any other causative factor involved in this man's development of lung cancer?
 A. As of this date, the information that I have suggests that his major risk factor was cigarette usage. He has a history of working in a job which could potentially have exposed him to substances of which I am not aware and that may have played some role in terms of adding to the risk for development of carcinoma, but as I said, I'm not aware of those specific substances and would feel again that his chief cause for the development of lung cancer was his smoking.
Id., at 25.
Upon further examination, Dr. Shaw stated that the reason he could not give an opinion as to whether there was another cause of Mr. Harrison's cancer was not because there aren't other causes, but because he did not know what materials Mr. Harrison was exposed to on the job. Id., at 27. Dr. Shaw further testified that the other types of pollutants or carcinogens that could have caused Mr. Harrison's lung cancer were asbestos, nickel, and radon. Id. He stated, however, that he had not been provided any information from Mrs. Harrison's attorneys regarding any exposures by Mr. Harrison to these substances, and that he had not been provided any information about what Mr. Harrison may have been exposed to while working at Amcast's predecessor. Id., at 29.
Pursuant to Civ.R. 56(F), Mrs. Harrison sought additional time to respond to Amcast's motion for summary judgment. In support thereof, she stated that the issue that was central to the determination of the motion for summary judgment was what materials Mr. Harrison was exposed to while working at the defendant's steel foundry. Mrs. Harrison stated that the facts that were necessary to determine that issue were completely within the knowledge of Amcast. Accordingly, Mrs. Harrison sought additional time to complete her discovery of Amcast on that issue.
In the alternative, Mrs. Harrison argued that the motion for summary judgment should be denied because genuine issues of material fact remained concerning the cause of Mr. Harrison's lung cancer. She first argued that Dr. Shaw did not state that Mr. Harrison's lung cancer was not causally related to his employment, but only that he was unable to make a determination of cause without further information. She then argued that she could present expert medical evidence that her husband's cancer was causally related to his employment. In support of that contention, she offered the affidavit of another of her experts, Dr. Donald Marger. Dr. Marger stated in his affidavit in pertinent part:
 Mr. Harrison had a significant smoking history, as well as a history of long-term exposure to ambient pollutants in a steel-foundry environment.
 Certainly, the causation of cancer is typically multi-factorial. That is, the development of cancer is probably genetically based with causative environmental factors superimposed.
 While smoking is typically the most prominent of these additional, environmental factors; nevertheless, it has also been documented that among other factors, exposure to coal tars and coke-oven emissions is also implicated. Environmental carcinogens such as are present in a typical steel-foundry operation could interact with smoking to increase the risk of developing lung cancer. It is my opinion, based on reasonable medical probability, that this was the case with Mr. Harrison, especially in view of his long-term exposure to the steel-foundry pollutants over a period of many years.
The trial court granted Mrs. Harrison's Civ.R. 56(F) motion for additional time to respond to Amcast's motion for summary judgment. After completing her discovery, Mrs. Harrison filed a supplemental response to the motion. Attached to that response were a number of documents she had received from Amcast in discovery, as well as Amcast's responses to her interrogatories. Mrs. Harrison stated that she was submitting these materials for the court's "review." She contended that based upon these materials and the arguments she had made in her initial response to Amcast's motion for summary judgment, a genuine issue of material fact remained concerning whether the materials to which Mr. Harrison had been exposed during his employment caused his lung cancer. Nevertheless, Mrs. Harrison did not point to any specific information in the discovery responses she submitted that identified any materials to which Mr. Harrison may have been exposed during the course of his employment with Amcast's predecessor.
The trial court granted Amcast's motion for summary judgment. The court concluded that Mrs. Harrison had presented no evidence as to what potentially carcinogenic materials Mr. Harrison was exposed to during the course of his employment and that in the absence of such evidence, no basis existed that would permit her experts to draw a conclusion that Mr. Harrison's lung cancer and death were causally related to his employment.
Mrs. Harrison filed a timely notice of appeal. She presents a single assignment of error for our review.
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE DEFENDANT-APPELLEE, AMCAST INDUSTRIAL CORPORATION, HOLDING THAT THE PLAINTIFF-APPELLANT'S PROFFERED MEDICAL TESTIMONY WAS INSUFFICIENT AS A MATTER OF LAW TO SUBMIT THE CASE TO THE JURY.
The standards to be applied to motions for summary judgment are well-settled. As we have stated:
 Summary judgment is proper under Civ.R. 56 when the moving party establishes, first, that there is no genuine issue as to any material fact, second, that the moving party is entitled to judgment as a matter of law, and, third, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. In considering a motion for summary judgment, the trial court must also "look at the record in the light most favorable to the party opposing the motion", Campbell v. Hospitality Motor Inns, Inc. (1986), 24 Ohio St.3d 54, 58, 24 OBR 135, 138, 493 N.E.2d 239, 242, and that all proper inferences drawn from any of the facts and evidence must be construed in favor of the party opposing the motion. Hounshell v. Am. States Ins. Co.
(1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315. Our review of the granting of a motion for summary judgment by a trial court is de novo. Doner v. Snapp (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 43-44.
Didier v. Johns (1996), 114 Ohio App.3d 746, 750.
The Ohio Supreme Court has further explained the respective obligations of the parties in a summary judgment proceeding:
 Accordingly, we hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
In support of its motion for summary judgment, Amcast filed the deposition of Dr. Shaw, one of the expert witnesses listed by Mrs. Harrison. Dr. Shaw testified that Mr. Harrison's major risk factor for developing lung cancer was his heavy smoking history. Dr. Shaw also testified that Mr. Harrison worked in a job that potentially could have exposed him to substances that may have played a role in increasing Mr. Harrison's risk for developing lung cancer; however, Dr. Shaw admitted that he had no information or records that would indicate the type of substances to which Mr. Harrison was exposed to at work, nor had he been provided any such information by plaintiff's attorneys. In the absence of evidence concerning the materials to which Mr. Harrison was exposed to at work, Dr. Shaw was unable to opine that Mr. Harrison's lung cancer was causally connected to his employment.
Even when construed in favor of Mrs. Harrison, Dr. Shaw's testimony does not create a genuine issue of material fact concerning whether Mr. Harrison's lung cancer was caused by his employment with Amcast. At best, it raises the possibility of a causal relationship between Mr. Harrison's illness and his employment. However, proof that a particular illness or injury is caused by a particular event or activity must be established by probabilities, not possibilities. See, e.g., Drakulich v.Industrial Commission of Ohio (1940), 137 Ohio St. 82; Shumakerv. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367.
Moreover, because Dr. Shaw had no evidence in his own records and had been given no evidence by plaintiff's attorneys concerning the materials to which Mr. Harrison was exposed to at work, Dr. Shaw could not, as a matter of law, offer an opinion that Mr. Harrison's lung cancer was caused by his employment. As the supreme court has stated:
 The opinion of a medical expert witness that a direct causal relationship existed between the plaintiff's inhalation of a particular substance and the chronic emphysema from which she suffered is inadmissible in the absence of evidence of the physical properties of that substance and their propensity to produce the injury claimed. If the witness knew such facts of his own knowledge, that knowledge should have been disclosed in his testimony preceding the hypothetical question. If not, those facts should have been otherwise proved and contained in the hypothesis upon which the opinion was based.
Dillow v. Young, Admr. (1966), 6 Ohio St.2d 221, syllabus.
We believe that Amcast's motion for summary judgment was sufficient to meet the initial burden imposed by Dresher v.Burt, supra. Dr. Shaw's deposition revealed that the plaintiff had no evidence of workplace exposure upon which an expert could render an opinion concerning causation. Indeed, in initially responding to Amcast's motion for summary judgment, Mrs. Harrison conceded that she had no evidence that would permit her to prove causation. She recognized that the question of what substances her husband was exposed to while working at Amcast was central to the determination of the motion for summary judgment. She stated that the facts necessary to determine that issue were completely within the knowledge of Amcast and thus, she sought additional time to complete her discovery of Amcast on this issue.
In further opposition to Amcast's motion for summary judgment, Mrs. Harrison subsequently submitted Amcast's discovery responses and invited the court to "review" them. In conducting that review, the trial court found nothing in them that would provide any basis for Dr. Shaw to render an opinion concerning causation, nor anything else in them that would support a conclusion that Mr. Harrison contracted cancer as a result of his employment with Amcast. We have also reviewed those materials and find nothing in them that would prevent summary judgment in Amcast's favor. Indeed, in her brief to this court, as she did below, Mrs. Harrison points to nothing in these materials that would support her allegation that her husband was exposed to substances during the course of his employment that caused the development of his lung cancer.
Mrs. Harrison also relied on the affidavit of Dr. Marger in opposition to Amcast's motion for summary judgment. She argues that properly construed in her favor, "Dr. Marger's affidavit is simply a tool to indicate that the Appellant has a medical expert that is capable of testifying in court that Decedent was exposed to the appropriate industrial carcinogenic irritants, and that those irritants acted in conjunction with Decedent's cigarette smoking to cause the lung cancer, and that both of the industrial and non-industrial lung irritants were the proximate cause of the Decedent's lung cancer." Brief of Appellant, Gladys Harrison, at p. 11.
Dr. Marger's affidavit is insufficient to create a genuine issue of material fact concerning the cause of Mr. Harrison's lung cancer for much the same reasons that Dr. Shaw's testimony was insufficient. Dr. Marger's affidavit refers to environmental carcinogens that are present in a "typical steel-foundry operation" that could interact with smoking to increase the risk of developing lung cancer. However, Dr. Marger's affidavit fails to identify what those substances are, their physical properties, and their propensity to produce lung cancer. Moreover, no evidence has been provided as to whether these unidentified "environmental carcinogens" were actually present during the course of Mr. Harrison's work at Amcast, and if so, whether Mr. Harrison was actually exposed to them. In the absence of such evidence, any opinion that may have been rendered by Dr. Marger in his affidavit concerning the cause of Mr. Harrison's lung cancer is inadmissible. See Dillow v.Young, supra. In short, we agree with the trial court that Dr. Marger's affidavit is speculative and conjectural and fails to create a genuine issue of material fact concerning the cause of Mr. Harrison's lung cancer.
Mrs. Harrison's failure to present evidence of the allegedly cancer-producing substances to which her husband was exposed to during the course of his employment with Amcast necessarily defeats her claim that her husband's death from lung cancer was causally related to his employment. The trial court did not err in rendering summary judgment to Amcast.
Mrs. Harrison's single assignment of error is overruled.
 CONCLUSION
Having overruled Mrs. Harrison's assignment of error, the judgment of the trial court will be affirmed.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Michael E. Susco Charles D. Smith Nelson M. Reid Hon. Dennis J. Langer